## LEOPOLD MILLER *et al.*

### *v.*

## RUSSELL M. LARNED *et al.*

*Filed at Ottawa March 28, 1882—Rehearing denied September Term, 1882.*

1. ACCOMMODATION PAPER—*defined.* Accommodation paper is either a negotiable or non-negotiable bill or note made by one who puts his name thereto without consideration, with the intention of lending his credit to the party accommodated. As between the party accommodated and the maker, the note or bill is not collectible.

2. SAME—*what constitutes accommodation paper.* Land actually belonging to A, stood of record in the name of B, who conveyed the same to C, taking back C's two promissory notes to B, for $6000 each, secured by deed of trust upon the land, and B, the payee, indorsed the same in blank, and delivered the same to A, with the understanding of all parties that the notes were to be used by him as he pleased, without any restrictions, the conveyance in fact not being in pursuance of any contract of sale: *Held,* that such notes were to be taken and treated as accommodation paper.

3. SAME—*as to the use of such paper by the beneficiary—and of defences by the maker.* It is a principle of general application that the beneficiary of an accommodation note without restriction as to the mode of its use, may transfer it, either in payment of his indebtedness, or as collateral security for a concurrent or even an antecedent debt, and the maker will have no defence.

4. As to the holder of an accommodation note into whose hands it has come in the usual course of business for a valuable consideration, the maker will have no defence, and it makes no difference that the holder may have taken the note with full knowledge that it was accommodation paper.

5. SAME—*sale of land for accommodation of vendor—rights of third persons.* Although the sale of real estate is colorable and for the accommodation of the vendor or real owner, yet as to third persons who have in good faith acquired an interest in the notes given for the purchase money, or the property itself, the vendee or nominal purchaser will not be permitted to allege his purchase was for the mere accommodation of the vendor, and for that reason not binding on him. As to such third persons all parties to the transaction will be concluded by the record they have made, and it will be treated as an absolute sale.

6. SAME—*release of security for accommodation paper—by whom—and under what circumstances.* Accommodation paper, so long as held by the beneficiary, may be negotiated for his benefit even after maturity; and while such paper is in such condition it is not in the power of the beneficiary to

release the lien of a trust deed securing the same, given by the maker on land of the beneficiary conveyed to the maker for his protection and indemnity, nor can any one else release the same, and the trustee can not, without evidence of the surrender of such paper to the maker or its cancellation otherwise.

7. Same—*pledge of accommodation paper, and payment of the principal 'debt—whether a discharge of a mortgage given to secure the paper pledged, as against holders of such paper pledged a second time.* A, the owner of real estate, procured B, in whom the record showed the title, to convey the same to C, for C's two notes, of $6000 each, secured by deed of trust on the premises to D, and C then conveyed the premises to A, who conveyed the same by warranty deed to E for the full value of the land. Before the conveyance to E, B had indorsed the notes in blank to A, who had pledged them as collateral security to a bank for a loan of $10,000; but A's name did not appear upon the notes so pledged, or his interest therein. Afterwards A paid off his debt and took up the notes of C which were pledged, but still left them with the bank, and some time afterwards again pledged them as collateral security for another loan from the bank, and the bank transferred A's note with the collaterals to innocent purchasers for value. E contended that when A paid off his first note of $10,000, and redeemed the pledge of the notes which were secured by the trust deed, that deed was discharged, and the debt secured by it paid: *Held,* that the trust deed was not thereby discharged, and that the notes of C, though accommodation paper, still remained valid obligations in A's hands, and that the second pledge of them was valid.

8. Recording act—*claimant under trust deed—conveyances subsequent to such deed.* A person buying or taking as collateral security notes secured by trust deed, is under no obligation to search the records before buying or taking the same, to ascertain what conveyances the grantor in the trust deed, or his grantee, has made since the making and recording of the deed of trust. The law charges such purchaser with notice of conveyances in the direct line of the title he is buying, and nothing more.

9. Assignee—*subject to what defences.* The assignee of a mortgage takes it subject to the same equities that have attached to it in the hands of his assignor. But this rule does not apply to one pledging a note secured by mortgage not payable to him, but held by him under a blank indorsement of the payee, as to which paper he is not a party. Equities against such pledgor will not affect the pledgee or holder of such note.

10. The rule that a mortgagor having the oldest equity may make the same defence against an equitable assignee as he could against the assignor, has no application to an assignee or holder of accommodation paper secured by mortgage. The maker of such paper can not make any defence against one who has taken it in good faith in the usual course of business.

11. Same—*whether the mortgage should accompany the paper secured.* Where accommodation paper which is secured by a mortgage has been

indorsed and placed in a bank as collateral security for a loan, it is not essential to the protection of the rights of the bank in respect to the security afforded by the mortgage, that the mortgage itself should have passed to the hands of the bank concurrently with the notes secured by it. The assignment of the notes carried with them an equitable assignment of the mortgage, and it did not matter that the assignee did not at the same time obtain possession of the mortgage. That he could obtain at any time when needed.

APPEAL from the Appellate Court for the First District;— heard in that court on writ of error to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. ROSENTHAL & PENCE, for the appellants:

No one is bound to search the records for conveyances made by the same person subsequent to the record of the deed under which he claims. He is only bound to look for prior conveyances or mortgages. *Iglehart* v. *Crane*, 42 Ill. 268; *Matteson* v. *Thomas*, 41 id. 113; *Hosmer* v. *Campbell*, 98 id. 572; *Heaton* v. *Prather*, 84 id. 332; *Connecticut* v. *Bradish*, 14 Mass. 296.

Hansbrough is estopped from alleging that these notes were not for a valuable consideration. *Silverman* v. *Bullock*, 98 Ill. 11; *Commonwealth* v. *City of Pittsburg*, 34 Pa. St. 520.

A contract will be construed according to its legal effect, and not according to a pretended secret agreement different from that expressed on its face. *Mason* v. *Burton*, 54 Ill. 353; *Jones* v. *Allen*, 70 id. 34.

A mortgage being non-negotiable, its assignee takes in equity subject to all the equities residing in the notes secured, in favor of the original maker; but no secret or collateral equity which merely grows out of the note itself, there being no equity between the assignee and a third person, can be asserted against an assignee who takes after maturity. *Olds* v. *Cummings*, 31 Ill. 188; *Ullman* v. *Kline*, 87 id. 268; *Silverman* v. *Bullock*, 98 id. 11; *Colehour* v. *State Savings Inst.* 90 id. 156; *Murry* v. *Lylburn*, 2 Johns. Ch. 441; *Mott* v. *Clark*, 9 Pa. St. 339; *Pryor* v. *Wood*, 31 id. 142; *Davis* v. *Barr*, 9

S. & R. 141; *Livingston* v. *Dean*, 2 Johns. Ch. 479; *Commonwealth* v. *Councils, etc.* 34 Pa. St. 496; *Putnam* v. *Clark*, 29 N. J. Eq. 412; *Losey* v. *Hoagland*, 3 Stockt. 246; *Woodruff* v. *Depue*, 1 McCart, 174; *Starr* v. *Hoskins*, 26 N. J. Eq. 416; .2 Daniell's Neg. Instr. secs. 1435–1437.

The maker of commercial accommodation paper negotiable after maturity to one having notice of its accommodation character, can not defend against the same where no limitation has been imposed upon its negotiation. 1 Daniell's Neg. Instr. sec. 726; Redfield & Bigelow's Leading Cases, 216, 217; Story on Promissory Notes, sec. 194; *Brown* v. *Mott*, 7 Johns. 362; *Grant* v. *Ellicott*, 7 Wend. 227; *Charles* v. *Marsden*, 1 Taunt. 224; *First National Bank* v. *Grant*, 71 Maine, 374; *Smith* v. *Knox*, 3 Esp. 46; *Harrington* v. *Dow*, 3 Rob. 283; *Dunn* v. *Weston*, 71 Maine, 270; *Parr* v. *Jewett*, 81 Eng. C. L. 684; *Maitland* v. *Citizens' National Bank*, 40 Md. 540; *Commonwealth* v. *City of Pittsburg*, 34 Pa. St. 520.

The trust deed was given not only to secure the holder of the notes, but also to indemnify the maker against loss. His personal liability on the notes gives him a right to hold the trust deed as his indemnity. *Burdett* v. *Clay*, 8 B. Mon. 291; *Comstock* v. *Hitt*, 37 Ill. 546; *Fowler* v. *Fay*, 62 id. 377.

The conveyance of the equity of redemption by quitclaim by Hansbrough to Walker, made the land the primary fund as between Hansbrough and Walker for the satisfaction of the notes, and Hansbrough had the right to enforce the security for their payment against the land. *Funk* v. *McReynolds*, 33 Ill. 495; *Tice* v. *Annin*, 2 Johns. Ch. 125; *Matthews* v. *Aiken*, 1 N. Y. 604; *Cox* v. *Wheeler*, 7 Paige, 248; *McKinstry* v. *Curtis*, 10 id. 503; *Dow* v. *Peters*, 3 Edw. Ch. 141; 2 Washburn on Real Property, pp. 216, *575.

Hansbrough being entitled to this security for his indemnity, then the holders of his notes are entitled to be subrogated to his rights, and may enforce his security before

payment by him. *Curtiss* v. *Tyler*, 9 Paige, 432; *Moses* v. *Murtgatroyd*, 1 Johns. Ch. 129; *Phillips* v. *Thompson*, 2 id. 418; *Russell* v. *Clark*, 7 Cranch, 69; *Burdett* v. *Clay*, 8 B. Mon. 291; *Bank* v. *Thorp*, 18 Johns. 505.

Mr. E. C. Larned, for the appellee R. M. Larned:

Complainants' sole claim to enforce the trust deed is upon an equitable assignment made to them of the same as collateral security to the note of S. J. Walker, of $12,000. By such equitable assignment they take the trust deed subject to all the equities which attached to it in the hands of their assignor, S. J. Walker. If he was estopped from enforcing the mortgage against his grantor, his equitable assignee is equally estopped. *Foster* v. *Strong*, 5 Bradw. 207; *Davis* v. *Beecher*, 69 Ill. 440; *Jones* v. *King*, 25 id. 388; *Walker* v. *Dement*, 42 id. 272; *Gregory* v. *Savage*, 32 Conn. 261; *Brooks* v. *Ricord*, 47 id. 30; *Stafford* v. *Fargo*, 35 id. 454; *Fortier* v. *Darst*, 31 id. 218; *Sumner* v. *Waugh*, 56 id. 539; *Crane* v. *Turner*, 67 id. 439; *Kleeman* v. *Frisbie*, 63 id. 489; *Clute* v. *Robinson*, 20 Johns. 611; *Schaffer* v. *Reilly*, 50 N. Y. 61.

The indebtedness evidenced by the notes being that of S. J. Walker, when he became the owner of the notes the debt, as between him and the maker, was satisfied, and he could not create a new indebtedness against Hansbrough by the reissue of these notes, nor could the mortgage be enforced by him against the premises to the prejudice of his grantee. *Bush* v. *Lathrop*, 22 N. Y. 543; *Turpin* v. *Ogle*, 4 Bradw. 611.

Mr. Justice Scott delivered the opinion of the Court:

The appeal of Leopold Miller and Jacob Leibenstein brings before this court the decision of the Appellate Court for the First District, in the case of *Augustus Bauer* v. *S. J. Walker*, touching the matters involved in their cross-bill in that case. So much of the decree of the circuit court made in the prin-

cipal case as dismissed the cross-bill of Miller and Leibenstein, by which it was sought to foreclose a trust deed on the tract of land claimed by Russell M. Larned, was affirmed by the Appellate Court, although the decree in other respects was reversed and the cause remanded. As the judgment of the Appellate Court as to Miller and Leibenstein was final and conclusive of their rights, they prayed, and were allowed, an appeal to this court touching the matters adjudged against them.

As elaborate arguments have been made on every phasis of the case as now presented in this court, rather more than the usual elucidation will be required to express the views entertained by the court concerning the question raised and discussed. A concise statement of the facts will be necessary to an understanding of the questions of law discussed. Both parties concede that on and prior to October 24, 1870, the title to the tract of land in controversy was in Henry H. Walker. On that day Henry H. Walker, by warranty deed, conveyed the property to William Hansbrough, and took back a trust deed on the property made to John G. Rogers, to secure two promissory notes, each for the sum of $6000, bearing date the 24th day of October, 1870, and payable to the order of Henry H. Walker, in one and two years, respectively, after date, with interest thereon at the rate of eight per cent per annum. The deed to Hansbrough and the trust deed to Rogers for the security of the notes to Henry H. Walker were both placed on file and recorded in the proper office in Cook county, where the land is situated, on the 5th day of November, 1870. It seems the original trust deed was either lost or destroyed, and afterwards Hansbrough executed a new trust deed describing the same property, and reciting on the face of it that it was made in lieu of the one lost or destroyed. On the 17th day of December, 1870, Hansbrough, by quitclaim deed, conveyed the equity of redemption,—for that was all the interest he then had in

the land,—to Samuel J. Walker; and afterwards, on the 12th day of January, 1871, Samuel J. Walker, his wife joining with him, by warranty deed, for a full, valuable consideration, conveyed the premises to Russell M. Larned. This latter deed was filed for record in the proper office on the 26th day of January, 1871. Leopold Miller and Jacob Leibenstein claim to be the assignees and holders of the Hansbrough notes, and to have the right to foreclose the trust deed and subject the land to their payment, while Russell M. Larned insists he is the owner of the premises under his deed from Samuel J. Walker, divested of the lien created by the trust deed to Rogers,—and this is the real contention between the parties to this appeal.

Had the transaction ended here, the case would have presented no difficulty. Larned, the grantee of Samuel J. Walker, would have taken nothing by his deed from him but the equity of redemption that was in Hansbrough, and the premises in his hands would have been subject to the lien created by the trust deed to Rogers, as the notes to Henry H. Walker secured by the trust deed were outstanding and unpaid. The complications in the case arise out of collateral facts, and the subsequent conduct of Samuel J. Walker, with which Hansbrough and Henry H. Walker had no direct or immediate connection, although it is doubtless true, as the sequel will disclose, that he had their implied, if not express, consent to do as he pleased with the Hansbrough notes. It will, therefore, be necessary to note the connection of Samuel J. Walker with the transaction.

There is evidence tending to show that Samuel J. Walker was the equitable owner of the premises at the time the same were conveyed to Hansbrough, although the legal title was in Henry H. Walker. Be that as it may, it is not a matter of much consequence, as the fact of its existence could not be known to strangers dealing with the land, or the notes secured on it. It appears that soon after the making of the

notes and trust deed by Hansbrough to Henry H. Walker,
the latter indorsed the notes in blank, and delivered the same
to Samuel J. Walker.

There can be no doubt the transaction between Hansbrough
and Henry H. Walker was colorable, and that the conveyance
to Hansbrough was not an actual sale. It was a mode
adopted to make accommodation paper of such unquestion-
able value as that it could be readily negotiated by Samuel
J. Walker, for whose benefit it was made. Hansbrough
incurred no risk in making the paper, for the land on which
the notes were secured afforded ample indemnity against his
personal undertaking as maker of the notes; and if it is true,
as defendant insists it is, that Samuel J. Walker was the
equitable owner of the premises, Henry H. Walker was also
well secured against personal loss on account of his indorse-
ment of the notes, by the real estate pledged for their ulti-
mate payment. That it was accommodation paper is evident
from the testimony of the maker and indorser of the notes.
Both admit their personal legal liability thereon, but expected,
as the notes were secured on real estate, the party accommo-
dated would take care of them. Neither of them ever expected
to pay the notes. It may therefore be assumed, that for the
purposes of this decision the notes of Hansbrough in the
hands of Samuel J. Walker, were, in the strictest commercial
sense, accommodation paper. Such being the case, Samuel
J. Walker had the implied consent (which, under the cir-
cumstances, was equivalent to express consent,) of both the
maker and indorser to negotiate the notes to whomsoever
would purchase them, whether due or not. In that regard
no limitation was placed on the party for whose use the notes
were made as to when or how he should use them. What is
called accommodation paper, is, where the maker loans his
note to the payee, with a view the latter may negotiate it for
his personal benefit. It is not essential such paper should
have any consideration to support it. A recognized definition

of accommodation paper is, either a negotiable or non-negotiable bill or note made by one who puts his name thereto without consideration, with the intention of lending his credit to the party accommodated. It is a principle of general application, the beneficiary of an accommodation note, without restriction as to the mode of its use, may transfer it, either in payment of his indebtedness or as collateral security for a concurrent or even an antecedent debt, and the maker will have no defence. The notes in this case are none the less accommodation paper because the maker and indorser are secured against personal liability by a trust deed on real property, alleged to have been equitably owned by the party accommodated. That fact only made the notes that much more valuable in the hands of subsequent holders.

As between the original parties there never was a time when the notes could have been collected off the maker. The reason is, the transaction was for the sole accommodation of Samuel J. Walker, and it was never understood the maker of the notes was obligated to make payment to him or to the payee, Henry H. Walker. But the rule of law is different as to the holder into whose hands the notes may have come in the usual course of business for a valuable consideration. As to him the maker can interpose no defence, and it makes no difference the holder may have taken the notes with the knowledge they were accommodation paper. Accommodation paper is made for the express purpose it may be sold or negotiated for the benefit of the person accommodated, and after it has been sold or negotiated in the usual course of business for value, the maker will not be listened to if he asserts it was without consideration. It is a reasonable rule that one who puts his note or bill in the hands of another to be sold or negotiated, after it is done, will not be permitted to answer the holder, who has taken it in good faith for value, that he does not owe the note or bill. The very purpose of making accommodation paper is, that the party favored may

dispose of it, and unless restricted he may transfer it either before or after maturity, and the maker will be equally bound. The usage in this regard is sanctioned by the practice that has prevailed in mercantile transactions everywhere, in this country and in England. That usage has now the consistence of law. Any other rule would permit the maker of such paper to practice a fraud on persons who should take paper he had put out to be negotiated in the usual course of business. The only safe rule is, that where a bill or note is given, with no restriction as to the mode or time of using it by the party accommodated, and the same has been transferred in good faith in the usual course of business, the holder, if he paid a valuable consideration for it, will be entitled to recover the full amount, although he may have had full knowledge it was accommodation paper. The authorities on this branch of the law are consistent and numerous. A few of them will be cited to illustrate the views expressed: 1 Parsons on Notes and Bills, pages 183, 226; 2 Parsons on Notes and Bills, page 27; *National Bank* v. *Grant,* 71 Maine, 374; *Dunn* v. *Weston,* id. 270; *Brown* v. *Mott,* 7 Johns. 360; *Harrington* v. *Dow,* 3 Rob. 275; *Commonwealth* v. *City of Pittsburg,* 34 Pa. St. 496; *Smith* v. *Knox,* 3 Esp. 46; *Maitland* v. *Bank,* 40 Md. 540.

Whether the notes in this case shall be regarded as accommodation paper in the strict commercial sense in which those terms are used, or whether it shall be held they were given on a fictitious sale of real estate, not intended by either party to be a valid sale, can make but little difference in the ultimate decision of the case. Should they be regarded as coming within the former definition, the principles of the cases cited are applicable; but if the latter shall be adopted, then the principle of *Silverman* v. *Bullock,* 98 Ill. 11, applies with equal force. The principle of the latter case is, that although the sale of real property is colorable, and for the accommodation of the vendor, yet as to third parties who may have acquired in good faith an interest in the notes

given for the purchase money or the property itself, the
vendee or nominal purchaser will not be permitted to allege
his purchase was for the mere accommodation of the vendor,
and for that reason not binding on him.    The reason for the
rule adopted in that case has its foundation in the plainest
principles of natural justice.    On the record it appeared to
all the world the sale to him was absolute, and as to parties
dealing either with the land or the notes secured on it, he was
held to be concluded by the record he had himself made.    It
was therefore held he was personally liable to the assignee of
his notes, as was also the estate pledged for their payment.
There is much similarity between that case and the one in
hand.    If the notes are not strictly accommodation paper,
then it must be admitted they were given to secure the alleged
purchase of a colorable sale of real estate to Hansbrough,
which was not intended by any of the parties to the trans-
action to be a valid sale.    On that hypothesis the principle of
*Silverman* v. *Bullock* applies, and as to third persons dealing
with the notes secured on the property, or with the property
itself, all parties to the transaction will be concluded by the
record they have made, which shows an absolute sale; and
so far as it may be necessary to the protection of persons
obtaining in good faith an interest in the notes or land, it
must be treated as an absolute sale of the property to Hans-
brough.

But the better definition is the one insisted on by defend-
ants,—that is, that the notes of Hansbrough are accommo-
dation paper for the use of Samuel J. Walker, and were so
intended to be by both the maker and the indorser.    The
conveyance to Hansbrough of the land may have been done
with a three-fold purpose: First, that the trust deed given
on it to Rogers might secure the maker of the notes against
personal liability on account of his undertaking; second,
that it might afford a like security to the indorser; and third,
that it might give additional credit to the notes when the

party accommodated came to negotiate them. In the further consideration of the case the Hansbrough notes will be treated as accommodation paper made for the use of Samuel J. Walker, to be by him negotiated, with no restriction as to the mode or time of using them. As to how or when the accommodated party was to use the notes, neither the maker nor the indorser had any concern, and imposed no restrictions. So far as they were concerned he had unlimited authority to use the notes as he pleased and when he pleased. With this understanding of the character of the paper, and the use the maker and indorser intended should be made of the notes by the party favored, the subsequent conduct of the parties may be more readily comprehended. As previously stated, soon after the making of the notes and trust deed, the notes were indorsed in blank by the payee, Henry H. Walker, and delivered to Samuel J. Walker. On the 28th day of November, 1870, Samuel J. Walker borrowed of the International Bank $10,000, and as collateral security to his own note given for the money borrowed, he pledged the two notes of Hansbrough, with the blank indorsement thereon of Henry H. Walker, by delivering the same to the bank. The name of Samuel J. Walker does not appear on either Hansbrough note, as indorser or otherwise. The principal note was sold by the bank to Amos S. Seely, and the Hansbrough notes were delivered to him in the condition they were received by the bank, as collateral security for the note sold to him. It appears the note held by Seely was afterwards, on the 14th day of June, 1872, paid by the check of Samuel J. Walker, and the collateral notes returned to the bank. On the 2d day of July, 1872, Samuel J. Walker borrowed $12,000 of the same bank, giving his own note, at ninety days, without interest until after maturity, and again pledged the Hansbrough notes as collateral security for his debt. One of the Hansbrough notes had then become due, but it is apprehended that can make no difference, as the

law is well settled the obliged party of accommodation paper, so long as the maker permits him to retain it, may pledge or negotiate it, and the maker has no defence to it against a holder who has taken it in good faith in the usual course of business, for value. Of course, the rule is different as to other paper. As against an assignee of other paper taken after maturity, the maker may defend as successfully as against the original payee. But the rule does not, and it has never been understood to, apply to accommodation paper. The authorities cited *supra* sustain this view of the law.

Treating the Hansbrough notes as strictly accommodation paper, as is warranted by the construction the parties themselves have given to the transaction, the case would seem to present no difficulty. Complainants are the holders of the notes in good faith for a valuable consideration, and would appear to have the clear right to enforce payment, either from the maker, or the indorser, Henry H. Walker, or out of the estate pledged by the trust deed for their payment. Whatever moral obligation may have rested on Samuel J. Walker to make payment of the notes, it does not appear he ever took upon himself any legal obligation to pay them. His name nowhere appears on the notes, as indorser or otherwise. It is to be observed neither Hansbrough, the maker of the notes, nor Henry H. Walker, the payee and indorser, never did and do not now deny their personal liability on the notes. The defence interposed is made solely by Larned, and only by him so far as payment is sought to be enforced against the estate pledged for their payment.

Larned, it will be seen, defends on the ground he took the property, under his deed from Samuel J. Walker, discharged from the lien created by the trust deed. One position taken is, the lien of the trust deed was in fact discharged at the time of the conveyance of the property by Samuel J. Walker to Larned, by the substitution of other collaterals with the bank for Walker's note of $10,000, or by the subsequent

discharge of the debt secured. Of this there is no satisfactory evidence in the record. It is certain the notes were never surrendered to Hansbrough, or to Henry H. Walker, or any one else, to be canceled, nor were they ever in fact canceled. Great stress is laid on the fact the trust deed was not found with the other papers, as showing the collaterals must have been changed at the time of the conveyance to Larned. That fact proves nothing satisfactorily. The assignment of the notes carried with them an equitable assignment of the mortgage by which they were secured, and it is a matter of no consequence whether the trust deed was delivered to the bank at the time. It could be delivered at any time when needed. It was not essential to the protection of the rights of the bank there should have been a concurrent delivery of the mortgage at the time of the delivery of the notes. Nor is it certain the mortgage was not delivered with the notes when they were first hypothecated with the bank.

It may be, and doubtless is, true that Samuel J. Walker agreed, and confidently expected, to procure the Hansbrough notes to be surrendered, and a formal release of the trust deed to be made, when he conveyed the property to Larned, and no doubt the attorneys who acted for Larned as confidently expected and believed he would do so; but the fact remains he did not do it. Past all cavil it is proven the notes remained all the time with the bank, or in the hands of parties holding the notes of Samuel J. Walker, and to whom they were delivered as collateral security for his indebtedness to them. In this connection it is suggested Samuel J. Walker did not intend to pledge the Hansbrough notes as collateral security for the second loan obtained from the bank,—that it was done inadvertently by some officer of the bank. The evidence warrants no such belief. The collaterals are described in the body of the notes over his own signature, and after rights of third parties have attached he will not be permitted to say it was done by mistake. It will

be held he intended to do exactly what he did do, and he will be bound by the legal effect of his act. Nor is there any improbability the bank would accept the notes as sufficient security for the debt of Samuel J. Walker. It is not accurate to say the collateral security was exactly the same amount as the principal debt. These notes had then been bearing interest nearly or quite eighteen months before the loan was effected, and the principal debt would not bear any interest until after the expiration of ninety days. That would make the collaterals considerably in excess of the debt they were to secure. Besides this fact, the opinion of title presented with the notes stated the title to the real estate upon which the notes were secured was perfect in Hansbrough, and that made the collaterals of the highest grade, and abundant security for the principal debt.

The argument the lien of the trust deed was merged in the fee of the estate when Walker paid his note to Seely, and became entitled to the possession of the notes pledged as collaterals, does not seem to have any tenable ground on which to rest. It does not appear that Samuel J. Walker ever had the legal title to the property embraced in the trust deed to Rogers, and it is not perceived how there could be any merger of the equitable title with the fee in him. Nor is it understood how the fact insisted upon could extinguish the indebtedness, or release the lien of the trust deed. The position taken on this branch of the case utterly ignores a fact frequently conceded by defendant, that the Hansbrough notes in the hands of Samuel J. Walker were accommodation paper, and hence he had no rightful authority to discharge the lien of the trust deed while the notes were outstanding and uncanceled, either in his hands or in the hands of any one else other than the maker. Hansbrough himself had an interest in the trust deed that it should be kept alive as indemnity against his personal liability on the notes. Being mere accommodation paper, his notes were

liable to be negotiated at any time, and so long as that contingency existed it was not in the power of Samuel J. Walker or any one else to release the lien of the trust deed. Certainly Samuel J. Walker had no right to do it, nor would the trustee, in whom was the legal title to the property, be authorized to release the lien of the trust deed, until evidence was presented to him the notes had been surrendered to the maker, or had been, in some rightful manner, canceled. It is, therefore, clear there was no release of the trust deed by merger or otherwise, in fact, by a surrender or canceling of the notes.

Another view presented is, that complainants are chargeable with notice of the conveyance by Samuel J. Walker to Larned, which it is said would operate as a release of the trust deed after payment of the Seely note, and he became thereby entitled to the possession of the notes secured. There is no warrant for this position, either in fact or law. Nothing in the evidence authorizes the belief either the bank or Miller and Leibenstein, at the time the notes were pledged a second time, or at any time before, had any actual notice of the deed from Samuel J. Walker to Larned, nor would the law charge them with notice of that fact. Neither of them was under any obligation to search the record before buying the notes, to ascertain what conveyances the grantor in the trust deed or his grantee had since made. The law only charges such purchasers with notice of conveyances in the direct line of the title he is buying, and nothing more,—as, for example, the law charges a dealer in such securities with notice of a release by the mortgagee or trustee, and that is because it is in the direct line of the title he is buying. The decisions of this court that declare this doctrine, are numerous and consistent. A recent case restating the rule is *Hosmer* v. *Campbell*, 98 Ill. 572. But if the law were otherwise, and it had been the duty of the bank, or Miller and Leibenstein, to examine the record of deeds, what would have been discovered? It

is well understood the registry of deeds makes known only such legal or other titles as are recorded.    Secret equities existing in others of course are not shown.    On examination it would have been discovered Larned had the equity of redemption that was in Hansbrough, and nothing more.    It is simply stating that which is self-evident, to say that Samuel J. Walker could convey no greater interest in the land to Larned than he had.    By the record,—and certainly no one would insist complainants were bound to discover secret equities,—it appeared he only had the equity of redemption that was in Hansbrough, and that was all he could convey to Larned.    The form of the conveyance adopted, whether by quitclaim or warranty deed, could make no difference.    A quitclaim deed would have passed the equity of redemption Samuel J. Walker had, as effectually as did the warranty deed employed for that purpose.    Charging complainants with notice of all the record disclosed,—if it were allowable, which it is not,—the title to the security pledged for the payment of the notes they were taking was perfect in Rogers, the trustee, and they could purchase with safety. The legal title to the real estate was in him, and it did not appear of record that he had ever released it.

The doctrine is well understood an assignee of a mortgage takes it subject to the same equities that attached to it in the hands of the assignor.    It is because a mortgage or a deed of trust is not assignable either at common law or under the statutes of this State.    By the common law, choses in action are not assignable so as to vest the absolute title in the assignee, nor has any statute of this State changed the common law in that respect.    This has been the rule adopted and acted upon ever since the decision in *Olds* v. *Cummings*, 31 Ill. 188, and has been many times restated in more recent decisions.    In the case now before this court the assignment of the notes carried with them an equitable assignment of the trust deed by which they were secured, and under the doc-

trine stated it is insisted complainants, by such equitable assignment, took the trust deed subject to all the equities which attached to it in the hands of Samuel J. Walker; and as he at the time of such equitable assignment to them was equitably estopped from enforcing the trust deed as a mortgage against his grantee, in like manner complainants were estopped to enforce it against Larned. The argument assumes as a fact that which does not appear by this record to exist, —that is, that Samuel J. Walker was the assignor of the notes and trust deed. Such is not the fact. As previously noted, his name nowhere appears, either on the notes or on the trust deed. Henry H. Walker was the assignor, and he is the only person whose name appears on the notes in that capacity. How was Henry H. Walker estopped? There was nothing to operate by way of estoppel as to him that would make it inequitable for him to foreclose the mortgage, had he been compelled to pay the notes on his personal indorsement. But treating the transaction as a valid sale, and under the rule in *Silverman* v. *Bullock*, after the rights of third parties have attached the parties will not be allowed to treat it otherwise than as a valid sale, what defence had Hansbrough to the notes? Certainly none at all, for he had the land by a perfect title, and might have retained it had he removed the incumbrance he placed on it. As was said in the case last cited, a court of chancery will not listen to him when he asserts a transaction fair on the record was secretly colorable for the benefit of his grantor, and, it may be added, nor for the benefit of any other person.

But there is another view that can be taken that is even more forcible and more satisfactory. As between Hansbrough and Henry H. and Samuel J. Walker, it is conceded the notes were mere accommodation paper, although when executed they were secured on real estate. The principle underlying the decision in *Olds* v. *Cummings*, and other analogous cases in this court, is, that the original mortgagor

has equities that are older and superior to any possessed by the assignee of the notes secured, and on the doctrine the oldest equity must prevail, the mortgagor has been let in to make the same defence to the mortgage in the hands of an equitable assignee as he could against the assignor. But what application can this doctrine have to an assignee or holder of accommodation paper? It would be most unreasonable to affirm the grantor in a mortgage to secure accommodation paper, has any equities superior to those of the assignee of the note, who thereby becomes the equitable assignee of the mortgage. Any application of the doctrine of *Olds* v. *Cummings* to the maker of a mortgage to secure accommodation paper, would be to make a most equitable and reasonable doctrine the means of enabling a party to perpetrate a great wrong on another. A court of equity will not lend its aid for any such purpose.

Of course the party accommodated could never recover the amount of the bill or note from the maker, but the settled law is, wherever the common law prevails, to accommodation paper in the hands of one who has taken it in good faith in the usual course of business for value, the maker can make no defence. Were it the law the assignee of accommodation paper was affected by the equities existing between the maker and the party accommodated, such paper, although well secured on real estate, would be utterly worthless in the hands of the assignee who may have taken it in good faith for value in the usual course of business among merchants or other traders. To allow the equities existing between the original parties to accommodation paper secured by mortgage to prevail over the equities of the assignee of the note, would be to carry the doctrine of *Olds* v. *Cummings* to such an unreasonable extent as would ensnare honest dealers in such securities. It is therefore wholly immaterial whether Samuel J. Walker be regarded as the assignor of complainants, as

the mortgage in their hands is not subject to the same defences as it would be in his hands.

There are equitable considerations that strengthen very much the conclusion reached. It is evident if the notes are to be collected, either off the parties personally liable, or by subjecting the mortgaged premises to their payment, or if not collected at all in either mode, some one connected with the transaction must suffer loss. It will fall either upon the present holders, or on Larned, or on Hansbrough, or on Henry H. Walker, as Samuel J. Walker is not now, and never was, personally legally liable to pay the notes. The principal note is worthless on account of the insolvency of the maker, S. J. Walker. The rule of law is, where one of two or more persons must suffer a loss, upon him whose negligent conduct made it possible for loss to occur will the consequences ultimately rest. It is his duty to use reasonable precaution to avoid imposition. That one who stands fair in a transaction should suffer loss for the negligent conduct of another, conflicts with the common understanding of right and justice. *Anderson* v. *Warne*, 71 Ill. 20. In the light of this equitable rule it is proper to ascertain, if possible, on account of whose fault has the complication surrounding this transaction arisen. Whose conduct made it possible for loss to occur? It was not on account of any negligent conduct on the part of complainants. The notes in suit were accommodation paper in the hands of the party accommodated, to be negotiated or hypothecated by him, with the tacit consent of the maker and the indorser, to or with any one willing to receive them. The present holders took them in the usual course of business, as they might rightfully and safely do. It was not for any fault of the indorser, for no negligence can be imputed to him. The same may confidently be affirmed as to the maker of the notes. But how is it as to Larned? It is said he paid full value for the land as for an estate in fee. That is conceded; but did he observe the necessary or even the usual precautions to avoid

ultimate loss? It can hardly be maintained that he did. He knew the notes secured on the land he was buying were negotiable paper not then due, and as they were outstanding the presumption would be, wholly unpaid. The attorneys conducting the negotiations on behalf of defendant were entirely familiar with the title to the land. Shortly anterior they had given an opinion the title to the land was perfect in Hansbrough, and hence the trust deed to Rogers was valid. That opinion was sent with the notes, when they were sent out to be negotiated or hypothecated. Familiar as they certainly were with all these facts, they ought, as a matter of common prudence, to have insisted the notes described in the trust deed should be delivered up to be canceled. Not to do so was the want of ordinary care usually observed in such matters. No matter if the utmost good faith was intended, the grantee had no right to rely on the promise or undertaking of Samuel J. Walker to take up the securities and cancel them. Leaving the notes in the hands of Samuel J. Walker made it possible for him to negotiate or hypothecate them again in the usual course of business, and unless valid, it would be to the great detriment of an innocent taker. The very contingency the negligent conduct of the grantee made it possible to occur, did in fact happen. The notes were hypothecated with complainants, and were taken by them in the usual course of business for value, and without any actual or constructive notice that defendant had any interest in the land pledged for their payment. Had defendant insisted, as was his duty, the notes should be actually surrendered up and canceled before completing his purchase, it would not have been possible for loss to occur. Under the circumstances it is a reasonable conclusion the equities of complainants in the cross-bill in the premises are superior to, and must prevail over, any equities defendant may have.

The judgment of the Appellate Court will be reversed, and the cause remanded to that court, with directions to

reverse the decree of the circuit court dismissing complainants' cross-bill, and to remand the cause for further proceedings conforming to this opinion.

*Judgment reversed.*

Mr. JUSTICE DICKEY, dissenting:

I can not concur in the conclusion reached in this case. Hansbrough, having title to the land in question, conveyed the same to Rogers, in trust, to secure the payment of his two notes to H. H. Walker, or order, for $6000 each. This placed the naked fee in Rogers, leaving an equity of redemption in Hansbrough, and the equitable interest in the land for security of the notes in H. H. Walker. In equity Rogers had no interest in the land. The whole of the land in equity was in Hansbrough and in H. H. Walker. Thus stood the title of record. The interest, then, in H. H. Walker is the thing in controversy now, between Larned on the one side, and Miller and Leibenstein on the other. No other parties have any interest in the controversy.

The interest of H. H. Walker was in equity transferred by him to Samuel J. Walker, by H. H. Walker indorsing his name upon the notes and delivering the same to Samuel J. Walker. This equitable assignment to S. J. Walker was not recorded. This same equitable interest originally in H. H. Walker was transferred to the bank, by a delivery of the notes from S. J. Walker to the bank, with the blank assignment of H. H. Walker thereon. Thus the ownership in equity of the whole interest in this land was in Hansbrough and in the bank, Hansbrough still holding merely the equity of redemption. In this condition Hansbrough, by quitclaim deed, under date of December 17, 1870, conveyed the land to S. J. Walker, and this deed was recorded January 23, 1871. On January 12, 1871, Samuel J. Walker conveyed, by deed, with full covenants, the land in question to Larned, and this deed was recorded January 26, 1871. At this time the equi-

table interest in this land (given originally to H. H. Walker by the trust deed to Rogers) which is the subject of controversy, was in the bank, held for Seely, who had acquired the Hansbrough notes secured by the trust deed.

The covenants in the deed of Samuel J. Walker to Larned, on record, were in substance a contract by Samuel J. Walker that he would take up and procure the discharge of the notes, or, in other words, that he would purchase the equitable interest in controversy and transfer the same to Larned. All this was of record.

Samuel J. Walker did, June 14, 1872, pay Seely, through the bank, for this equitable interest, now in controversy, and as against all the world except Larned, that interest became the property of Samuel J. Walker. But as between Samuel J. Walker and Larned, the land at once became vested in Larned by operation of the covenants in his deed of record. It seems to me that this was the effect not only as against Walker, but as against all other persons claiming this interest through Walker by subsequent purchase from Walker, with notice, either actual or constructive. After this, and on July 2, 1872, Samuel J. Walker borrowed of the bank some $12,000, and pledged these Hansbrough notes as collateral security for the payment thereof, at ninety days, and gave to the bank as evidence of that debt, and pertaining thereto, a paper in the following words, that is:

"No. 2233.                              CHICAGO, *July 2, 1872.*

"Ninety days (no grace) after date, for value received, I promise to pay at the office of the International Bank, to the order of the International Bank, the sum of $12,000, with interest at ten per cent per annum after maturity; and in case this note shall not be paid within ten days after the maturity thereof, interest shall thenceforth be charged at the rate of twenty per cent per annum. Such rate was agreed upon as the measure of damages for the non-payment hereof at maturity.

"Having deposited as collateral to secure the payment hereof, two notes, William Hansbrough, $6000 each, and secured by trust deed to John G. Rogers, the east half of the north-west quarter, section 4, town 38 north, range 13 east, which notes I hereby give the legal holder of this note authority to sell, or any part thereof, on the maturity of this note, or at any time thereafter, or before, in the event of said securities depreciating in value in the opinion of said holder, at public or private sale, at his discretion, without advertising the same or giving me any notice, (notice is hereby expressly waived,) and to apply so much of the proceeds thereof to the payment of this note as may be necessary to pay the same, with all interest due thereon, and also the payment of all expenses attending the sale; also five per cent as a brokerage or commission for selling the collaterals; and in case the proceeds of the sale of the said notes shall not cover the principal, interest and expenses, I promise to pay the deficiency forthwith after such sale.

(Signed)                                    SAMUEL J. WALKER."

With the above paper was given to the bank at that time, by S. J. Walker, the Hansbrough notes mentioned in the trust deed to Rogers. These notes, with the memoranda upon them, are set out in the record as exhibits 28 and 29, and are as follows.   Exhibit 28 reads as follows:

"$6000.                          CHICAGO, *October 24, 1870.*

"Two years after date I promise to pay to the order of Henry H. Walker $6000, at the Second National Bank, Chicago, Illinois, value received, with interest from date at eight per cent per annum.

(Signed)                                    WILLIAM HANSBROUGH."

Secured by trust deed of this date, duly stamped.   Indorsed on the back of said note, "Henry H. Walker."   Written across the face of said note is the following memorandum:   "East

half, north-west quarter, section 4, town 38 north, range 13 east third principal meridian."

Exhibit 29 reads as follows:

"$6000.            CHICAGO, *October 24, 1870.*

"Two years after date I promise to pay to the order of Henry H. Walker $6000, at the Second National Bank, Chicago, Illinois, for value received, with interest from date at eight per cent per annum.

(Signed)              WILLIAM HANSBROUGH."

Secured by trust deed of this date, duly stamped. Indorsed on the back of said note, "Henry H. Walker." On the face of this note was written (as on exhibit 28) the words: "East half, north-west quarter, section 4, town 38 north, range 13 east third principal meridian."

This note of Samuel J. Walker, of July 2, 1872, (being indorsed in blank, thus: "Without recourse. International Bank, Francis A. Hoffman, Cash'r,") was sold and delivered to Miller and Leibenstein, with the collaterals above mentioned. Under this purchase it is that they claim an equitable interest in this tract of land to the extent of paying the amount due on the $12,000 note given to the bank July 2, 1872. Thus it will be seen the only title they claim to an interest in this land is under and through Samuel J. Walker, and this by virtue of an assignment by him of such interest, dated July 2, 1872. If they have any interest in this land it is by purchase from the bank of such interest in the same as the bank derived from Samuel J. Walker by purchase from him on July 2, 1882. Before that time Samuel J. Walker had sold and conveyed *that very interest* (as well as all other interests, to make a full title,) to Larned, by his deed of warranty, and this was on record, and in the direct line of the title bought by them. They had record notice of Larned's rights, and could not undermine them by a subsequent purchase.

Lay aside our recording laws, and Larned's equity is first in time, and therefore superior to that of Miller and Leibenstein.    If Larned had neglected to record his deed until after Leibenstein had placed the assignment from Samuel J. Walker on record, by recording the same in the office of the recorder, or by filing a bill in a court of record, setting up their equity, then their equity under the recording laws would be superior. It is a matter of no significance that Samuel J. Walker's name does not appear in the trust deed to Rogers, or on the Hansbrough notes, so long as it appears affirmatively on the face of the assignment of these notes (as collaterals), not written on the notes, that Samuel J. Walker was in possession of the notes, with the blank indorsement of H. H. Walker upon them, and claiming to be the owner, and did assign his supposed interest in the notes, and in this land, by another paper.

I concede that if Miller and Leibenstein had bought these notes of the bank without notice that they were derived from Samuel J. Walker, they would not have been put upon inquiry as to whether he had parted with his interest in this land.    He would not then have stood in the line through which they deraign title.    I am persuaded that some of my brethren who concur in this decision have not given due consideration to this feature of the case.    Miller and Leibenstein have no standing as claimants of an equitable interest in this property, except through and by the purchase from S. J. Walker on July 2, 1870.    Before that time Samuel J. Walker had conveyed, for a full price, this very interest to Larned, and his deed was on record.