## Drumm Construction Company, Appellant, v. Frank Mickel, Appellee.

### Gen. No. 27,146.

1. BILLS AND NOTES—*right of maker of accommodation paper to assert want of consideration against bona fide purchaser for value.* After accommodation paper has been sold or negotiated in the usual course of business for value, the maker will not be allowed to assert that it was without consideration.

2. BILLS AND NOTES—*effect of notice that note made for accommodation on rights of bona fide purchaser for value.* In an action upon a promissory note, a charge which in effect directed the jury to find for defendant if they believed that the note was an accommodation note and that plaintiff had knowledge of that fact when receiving it, though they may at the same time ·have believed that plaintiff was a bona fide holder for value before maturity, was reversible error.

3. BILLS AND NOTES—*introduction of note in evidence as placing burden of establishing defense on defendant.* In an action on a promissory note, plaintiff makes out a prima facie case by introducing the note and the burden is then on defendant to establish his defense by a preponderance of the evidence, and in such a case an instruction which, in substance, states that plaintiff has the burden of proof and must prove his case by a preponderance of the evidence is erroneous as tending to mislead the jury as to who had the burden of proof.

Appeal from the Municipal Court of Chicago; the Hon. F. J. CAMPBELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and remanded. Opinion filed July 11, 1922.

CHARLES M. HAFT, for appellant.

CECIL C. ERICKSON, for appellee; EDGAR H. SCHROEDER, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On January 22, 1920, plaintiff (appellant) caused to be entered in the municipal court of Chicago a judg-

ment by confession against the defendant (appellee) on the latter's judgment note for $1,900, dated November 13, 1919, payable on November 25, 1919, to the order of North Shore Paige Agency, Chicago, with interest at 7 per cent per annum after date. On the back of the note was the indorsement "North Shore Paige Agency, by H. A. Drumm." The amount of the judgment entered was $1,416.28, made up of a principal sum of $1,371.28, interest thereon, and $25 attorney's fees provided in the note. Subsequently defendant moved that the judgment be opened, supporting the motion by his affidavit. The court granted the motion and it was ordered that the affidavit stand as an affidavit of merits. There was a trial before a jury resulting in a verdict against plaintiff, and on March 23, 1921, the court entered judgment on the verdict and ordered that the judgment by confession be vacated and set aside, and that defendant recover his costs, etc. Thereupon plaintiff prayed and perfected this appeal.

In defendant's affidavit, after setting forth certain facts, he alleged, in substance, two defenses: (1) that the note was an accommodation note and given without consideration, of which plaintiff, through its president, said H. A. Drumm, had knowledge, and (2) that plaintiff was not a bona fide holder for value of the note. Defendant further alleged that although he was indebted to the Paige Agency in the sum of $490 for balance due on the purchase of a certain automobile, he was not indebted to plaintiff on the note.

On September 26, 1919, H. A. Drumm owned and operated an automobile business under the name of North Shore Paige Agency in Chicago. Howard I. Lamberton was employed by him as a salesman. Drumm was also the president and treasurer of the plaintiff corporation and directed its business affairs. About this time defendant agreed to purchase of the Paige Agency an automobile for the sum of $2,390.

His negotiations were had with Lamberton, who gave defendant a written memorandum of the· purchase dated September 26, 1919, and signed in the name of said Paige Agency by Lamberton, on which it was stated that the delivery of the automobile was to be made as soon as possible and that on the purchase price there was a total credit of $1,900, and a balance due from 'defendant of $490. This total credit was made up of $200 cash, and $1,700 for allowance on two used touring cars. Defendant testified, in substance, that on the evening of November 6 or 7, 1919, Lamberton delivered the automobile to him and stated he would call again on the following morning; that he did so and then stated that he did not want defendant to pay the balance of $490 due on the automobile, which defendant then offered to pay, but that the Paige Agency needed some money for a few days and he wished defendant would sign a note payable to .it, so that it might raise the money at a bank; and that defendant finally agreed to sign such a note, and did so, and delivered it to Lamberton. This note, introduced in evidence, is a printed form of judgment note used by the Paige Agency. It is dated November 6, 1919, and therein. defendant promised to pay to the order of the Paige Agency $1,900, seven days after date, with interest at 7 per cent per annum after date. Below the confession of judgment clause appears defendant's signature. ,Below the signature and attached to the note, though separated by perforations, is another paper, containing the statement: "This note is given for part purchase price of one Paige Larchmont automobile, model 55, motor No. 83832, and the equipment thereof." Then follows the statement in small type that the title and right to the possession of the property should remain in the Paige Agency, or its assigns, until the full purchase price thereof is paid, and several other provisions. Underneath these printed statements appears the second

signature of defendant. The note does not bear any indorsement on the back. Defendant further testified, in substance, that on the day of the maturity of this note, November 13, Lamberton again called on him, stated that the Paige Agency "needed the money a little longer," requested defendant to sign another similar note for the same amount, maturing November 25, and further said that he would return the first note; that defendant, after making protestations, signed the note sued on and delivered it to Lamberton, and at the same time the latter delivered to defendant his (Lamberton's) judgment note for $1,900, due in ten days, payable to defendant's order; that a day or two afterwards Lamberton returned to defendant the first note; and that he (defendant) never saw Lamberton thereafter. The note sued on is of the same tenor and effect as the first note and had a similar paper attached thereto signed by defendant. Lamberton was not a witness at the trial, and Drumm testified that he left the employ of the Paige Agency shortly after November 13, and that he did not know his present whereabouts.

Defendant further testified, in substance, that, becoming worried about the second note, he consulted an attorney, and on November 20, before the maturity of said note, had a conference with Drumm, meeting him then for the first time, at which conference Mr. Erickson, defendant's attorney, John Angeres, his friend, and Mr. Lamberton, father of Howard I. Lamberton, were present; that at this conference Drumm was informed as to defendant's previous dealings with Howard I. Lamberton and was shown the written memorandum, or contract of purchase, as signed by Lamberton, and was further informed that said note was an accommodation note; that Drumm said that this was the first time he had seen or heard about any such memorandum or contract; that Drumm was asked where said $1,900 note then was,

and that he replied that he *then had it in his possession;* and that Drumm was requested to cancel and return the note to defendant, but refused to do so, saying he would keep it until he could see Lamberton, and would in a day or two communicate with defendant's attorney regarding the matter, which he failed to do. John Angeres, called as a witness for defendant, corroborated him as to what occurred at this conference and what Drumm said.

Drumm testified, in substance, that plaintiff acquired the note "on or *about* November 13," and gave $1,900 for it; that he, as owner of the Paige Agency, first received the note on that date in part payment of the purchase price of the automobile, and that he, as such owner, carried on the transaction for the purchase of the note by plaintiff with himself, as president of plaintiff; that payment for the purchase of the note by plaintiff was made by its check payable to the order of the Paige Agency (such check was not produced); that both he, as owner of the Paige Agency, and plaintiff did their banking business with the Central Manufacturing District Bank; and that the first time that he learned that two used automobiles were accepted as part payment on the purchase price of the automobile was at the conference of November 20. When called as a witness in rebuttal he denied stating at said conference that the note was then in his possession, and further testified that he, representing plaintiff, delivered the note to said bank on the day of its date, November 13, that the bank discounted it and credited the amount to plaintiff's account, and that the note remained in the bank until shortly after its maturity, November 25, when he received it back. Defendant testified that he never received any notice from the bank relative to any note of his in its hands. Drumm identified three bills or invoices, introduced in evidence, which he, as owner of the Paige Agency, delivered to defendant in December, 1919, and which

showed a balance of $1,371.28, claimed to be due said Agency from defendant for the automobile, certain equipment and repairs. On one of these invoices a credit of $1,700 is allowed for "two used cars," but no credit is allowed for the $200 cash paid Lamberton by defendant. This net balance is the amount, plus interest and attorney's fees, for which plaintiff entered the judgment by confession on the note. On cross-examination Drumm was asked, inasmuch as the note was for $1,900, why it was that judgment was entered for $1,416.28, and he replied that defendant was given the credits on his indebtedness to the *Paige Agency,* as shown in said invoices, and that the amount for which *plaintiff* took judgment was for said balance of $1,371.28, "plus the costs."

In section 29 of the Negotiable Instruments Act of this State, in force July 1, 1907 (Cahill's Ill. St. ch. 98, ¶ 49), it is provided that: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party, and in case a transfer after maturity was intended by the accommodating party notwithstanding such holder acquired title after maturity." In section 190 of the Act (Cahill's Ill. St. ch. 98, ¶ 213) the word "holder," as used in the Act, means, unless the context otherwise requires, "the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof," and the word "value" means "valuable consideration." In section 25 of the Act (Cahill's Ill. St. ch. 98, ¶ 45) "value" is defined as "any consideration sufficient to support a simple contract," and in section 26 (Cahill's Ill. St. ch. 98, ¶ 46) it is stated that: "Where value has at any time been given for the instrument, the

holder is deemed a holder for value in respect to all parties who became such prior to that time.''

The uncontradicted evidence discloses that the note of $1,900, sued upon, was signed by defendant as maker, was made payable to the order of the Paige Agency (of which H. A. Drumm was the owner) and was delivered on the day of its date to Lamberton, Drumm's agent, who in turn delivered it to Drumm, who was also at that time president and treasurer of the plaintiff corporation and the active director of its business affairs, and that, at *some time* subsequent to said delivery, Drumm, as owner of the Paige Agency, indorsed the note and it came into plaintiff's hands.

We do not think that the first defense mentioned in defendant's affidavit is a good one. ''No consideration moving to the accommodating party is necessary to uphold accommodation paper.'' (8 Corpus Juris, p. 255, sec. 403.) ''Accommodation paper is made for the express purpose it may be sold or negotiated for the benefit of the person accommodated, and after it has been sold or negotiated in the usual course of business for value, the maker will not be listened to if he asserts it was without consideration.'' (*Miller v. Larned,* 103 Ill. 562, 570.) ''And this is so, although the holder had knowledge, before the paper was transferred to him, that it was accommodation paper.'' (8 Corpus Juris, p. 261, sec. 410; *Miller v. Larned,* 103 Ill. 562, 571; *Hodges v. Nash,* 141 Ill. 391, 394.)

As to the second defense mentioned, viz.: That plaintiff was not a bona fide holder for value of the note, the evidence was conflicting. The testimony of defendant and his witness, Angeres, tended to show that on November 20, seven days after the accommodation note had been delivered to the Paige Agency, i. e., Drumm, it was still unnegotiated in Drumm's hands, and defendant then in effect, by demanding the return to him of the unnegotiated note, revoked it, which he had a right to do. (8 Corpus Juris, p. 258,

sec. 408; Tiedeman on Commercial Paper, sec. 158.) And plaintiff, to whom the note was *subsequently* negotiated as defendant claims, through Drumm, its president, had notice of such revocation and could not be an innocent indorsee. (8 Corpus Juris, p. 259, sec. 408; *Mutual Investment Co. v. Wildman,* 182 Ill. App. 137, 144.) The testimony of Drumm, on the other hand, was to the effect that "on or *about*" November 13, the day of the date of the note and the day he received it from defendant through Lamberton, he individually received plaintiff's check in payment of the transfer of the note to it. The check, however, was not produced. Drumm also testified that after plaintiff received the note plaintiff discounted it at the Central District Bank, in whose possession it remained until shortly after its maturity, November 25, when it was received back. It does not bear plaintiff's indorsement, and defendant testified that he never received any notice from the bank relative to any note of his in its hands. Were it not for certain instructions given the jury in the court's oral charge, we would be inclined, under all the facts and circumstances in evidence, to affirm the judgment.

The court in the oral charge to the jury stated, in substance, that the main issue for the jury to determine is whether or not the plaintiff acquired the note as an innocent purchaser before maturity, without any knowledge of the defenses that might be set up against it, or, on the other hand, "whether it was a note given by the defendant as an accommodation by which money may be raised, and that the plaintiff had full knowledge of that at the time he acquired the note." And the court further stated: "If you believe by a preponderance of evidence in this case that the defendant gave this note as an accommodation to this man, Lamberton, upon which to raise money, and if you believe the plaintiff in this case had knowledge of that, then in that case you should find for the defend-

ant." In this portion of the charge the jury were directed in effect to find for the defendant, if they believed that the note was an accommodation note and that plaintiff had knowledge of that fact when receiving the note, even though they may at the same time have believed that plaintiff was a bona fide holder for value before maturity. It was an erroneous statement of the law, and in our opinion necessitates a reversal of the judgment and a remanding of the cause for a new trial. Under the provisions of section 29, above quoted, of our Negotiable Instruments Act, in force when the note in question was given, the maker of an accommodation note, "is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." See also *Miller v. Larned,* 103 Ill. 562, 571, and *Hodges v. Nash,* 141 Ill. 391, 394, which disclose that such was the law of this State prior to the passage of said act.

The court in the oral charge to the jury also stated, in substance, that the plaintiff has the burden in this case and must prove its case by a preponderance of the evidence, and that if it has not proven its case by a preponderance of the evidence, or if the evidence is equally balanced, "then your verdict should be for the defendant." The plaintiff made out its prima facie case by introducing its note. The burden was then on the defendant to establish his defense by a preponderance of the evidence. The instruction tended to mislead the jury as to who had the burden of proof.

For the reasons indicated the judgment of the municipal court is reversed and the cause remanded.

*Reversed and remanded.*

BARNES, P. J., and MORRILL, J., concur.