## MINNA HILL

### *v.*

## ALOIS SIFFERMANN.

### *Opinion filed October 23, 1907.*

1. APPEALS AND ERRORS—*party cannot avail, on appeal, of a defense not relied upon in answer.* One whose sole defense, as disclosed by her answer, to a bill in aid of execution to set aside a conveyance to her from her husband is that the husband held the property in trust for her and conveyed in pursuance of the trust, cannot be permitted to urge, on appeal, that the evidence showed she was a *bona fide* creditor of the husband.

2. SAME—*defense not urged in brief and argument is waived.* A defendant to a bill in chancery who appeals to the Appellate Court and urges a defense claimed to have been disclosed by the evidence but not interposed in her answer, and who does not contend, in her brief and argument filed in the Supreme Court upon further appeal, that the Appellate Court erred in not sustaining the defense relied upon in her answer, waives such defense.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

On December 19, 1904, appellee filed in the superior court of Cook county, against Minna Hill and Charles J. Hill, her husband, a bill in aid of an execution issued upon a judgment recovered in the circuit court of that county on January 10, 1899, against the husband, for $434.30 and costs. The bill alleged, among other things, that prior to the date of the judgment Charles J. Hill had been the owner of certain described property on Hermitage avenue, in Chicago, Illinois, and that on May 25, 1898, and after the indebtedness had been incurred upon which the judgment was based, Hill and wife conveyed the premises to Felix Babbage, who on the same day, without consideration, conveyed the same to the wife for the purpose of defrauding appellee.

The defendants answered the bill and a replication was filed. The cause was then referred to a master, who heard the evidence, from which it appears that Minna Hill was married to Charles J. Hill in 1882; that at an earlier time she had been the wife of Jacob Koenig, who departed this life in 1880; that from Koenig's estate she received the sum of $3000, and after her marriage to Hill, and in 1884 or 1885, she loaned him $500 of this money, which was to be re-paid, with interest, in one year, and was to be used in conducting a meat market. Hill paid but one year's interest and never re-paid the principal in cash. No note or written memorandum was given to evidence this indebtedness. Hill's meat market was carried on at the corner of O'Brien and Jefferson streets, in the city of Chicago. About the year 1886 the realty at that number was purchased by him for $6250, which was paid as follows: $2500 in cash, delivered to Charles J. Hill by his wife and paid by him to the vendor; $250 by the personal note of Charles J. Hill, and $3500 borrowed upon note secured by mortgage on the

real estate purchased. The $2500 in cash was the balance of the money received by Mrs. Hill from the estate of her former husband. The title to this property was taken in the name of Charles J. Hill, and so remained until 1893. During that period Hill engaged in the meat business on the premises and reduced the principal of the mortgage indebtedness $500. In that year this property was sold for $12,000. Of the proceeds, $3000 was used in paying off the mortgage indebtedness, and the balance ($9000) was deposited in bank to the credit of Charles J. Hill. Within a month thereafter the property in question in this suit, located on Hermitage avenue, was purchased for $4750 and paid for with a part of the money so deposited in bank, and the title to the property was taken in the name of Charles J. Hill. That real estate was improved by a residence building, consisting of two "flats," one of which was occupied by the Hill family as a home and the other was rented. Mrs. Hill testified that her husband agreed with her at the time the property at O'Brien and Jefferson streets was sold, that she should select a home to cost not to exceed $5000, the title to be in his name; that he should attend to the payment of the taxes but that the property should be deeded to her at any time on her request. She testified that he agreed to pay the taxes, "and I kept the rent and used it in the family; that was the understanding at the time when the property was bought in Mr. Hill's name, because my health was very poor at that time, and I wanted to save the trouble of my going down and paying the taxes, and different things of that kind, so I trusted it in his name."

Charles J. Hill became insolvent in 1898. Some time previous to his failure the Hermitage avenue property was sold for taxes. Mrs. Hill testified that she discovered this fact in May, 1898, and then insisted that the title to the home should be placed in her name, and that at this time, on account of her insistence, the property was deeded to Babbage and by Babbage to her. Except in collecting the

rents arising from the flat, as above stated, all the business with reference to the real estate held in the name of the husband, down to the time when the Hermitage avenue property was deeded to the wife, was conducted by Charles J. Hill and in his name.

Appellee and Charles J. Hill had been acquainted for years. Hill testified that Siffermann advised him in his business affairs and that they met very frequently,—generally as often as twice a week; that appellee knew all about the sale of the first piece of property and of the purchase of the other realty and knew who furnished the money for this last purchase. Appellee denied that he knew anything about any of the wife's money having been used for the purchase of the property involved in this suit. Hill stated that appellee understood that the Hermitage avenue property was his (Hill's) "to a certain extent. He knew that we sold the Jefferson street property, and by that he thought the property was mine there on Hermitage. * * * He knew that I lived on this property and owned the property,—that is, he imagined I owned it." Charles J. Hill further stated that he did not know that he told the appellee whose name that property was in or whose money went into it.

Appellee loaned Charles J. Hill $300 in 1894 and $100 on August 18, 1898, in each instance taking a promissory note, in which was embodied a warrant of attorney authorizing the holder of the note to confess judgment thereon, and both of these notes were merged in the judgment, satisfaction of which is desired by appellee. Siffermann testified that about the time the first loan was made he said to Charles J. Hill, "Now, I want you to be straight and square with me," and that Hill replied, "I will," when appellee said, "In case anything happens let me know, so I will record my judgment notes," and that Hill then said, "As sure as my name is Charlie Hill I will never assign my property to my wife or anybody else." Appellee further testified that just

after the Hermitage avenue property was purchased, and before the judgment notes were given, Charles J. Hill stated to the appellee that he owned the property last mentioned. Charles J. Hill denied these conversations, and Mrs. Hill testified that she never knew anything about her husband's business or his creditors after the purchase of the Hermitage avenue property.

Hill never made any cash payment to his wife on account of the principal or interest of any of the money obtained from her by him, except the payment of one year's interest on the $500, made at some time soon after it fell due, and, so far as appears from the record, after receiving the money he never made any promise to re-pay it, unless his agreement to deed the Hermitage avenue property to her upon her demand can be regarded as a promise to pay.

On January 19, 1906, the master reported, recommending that the property should be subjected to the lien of that portion of the judgment which represented the $300 note, with interest thereon,—that is to say, the sum of $300, with interest at the rate of six percentum per annum from the 18th day of August, 1894, to January 10, 1899, and with interest on that aggregate at five percentum per annum from the last mentioned date. The note for $100 was not given until after the transfer of the property to Mrs. Hill. Objections to this report were filed with and overruled by the master. Exceptions were then filed in the superior court and sustained, and the bill was dismissed for want of equity. The decree of the superior court, upon appeal to the Appellate Court for the First District, was reversed and the cause was remanded, with directions to enter a decree in accordance with the recommendation of the master. The Appellate Court made a certificate of importance, and Mrs. Hill alone appeals to this court.

BLUM & BLUM, for appellant.

EDMUND S. CUMMINGS, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The only defense to the bill insisted upon in this court is indicated by the following language quoted from the brief and argument of the appellant: "Appellant submits as the salient features of this case these facts: That she is the creditor of her husband to the extent of $3000, and was such creditor before the existence of the indebtedness from her husband to appellee. * * * These being the facts, we submit as the law that appellant's husband had a right to prefer her to his other creditors; that the equities of appellant and appellee being equal from the standpoint most favorable to appellee, the prior legal right of appellant must prevail," etc. The same contention was made in the Appellate Court, and that tribunal, after a careful consideration of the evidence, arrived at the conclusion that Mrs. Hill held no indebtedness against her husband which was enforcible at the time the conveyance to her was made, and it is now earnestly insisted that in so finding the Appellate Court erred. We are of the opinion that it is not necessary to determine whether appellant was a *bona fide* creditor of her husband at the time she took title to the Hermitage avenue property.

The defense interposed in the superior court appears from the following language, quoted from the answer as that document is abstracted by appellant: "That the premises described in the bill of complaint were bought with money that was the sole and exclusive property of Minna Hill, and the title to said real estate was taken in the name of Charles J. Hill under an agreement between him and Minna Hill that he would at any time convey same to her when requested, or to any person to whom she should request a conveyance; that Minna Hill requested said Charles J. Hill to convey said premises to her, as he was in duty bound to do, and that in pursuance of said request the said Charles J. Hill, as trustee for her, agreed to convey the legal title to her, and

thereupon, in order to effect the transfer of the legal title to said premises, as aforesaid, the conveyances set forth in the bill of complaint were made and executed, and ever since the purchase of said premises with the money of said Minna Hill she had been in the actual possession of the same and had been collecting the rents arising therefrom (except the part thereof used as a family residence) for her sole use and benefit, and that no money consideration passed with reference to said conveyances, and that said conveyances were not made to prevent said premises being subjected to the lien of any judgment against Charles J. Hill or to prevent his creditors from having recourse to said real estate to satisfy their claims, and they deny that said conveyances were a fraud upon the rights of the complainant, and pray to be dismissed at complainant's costs."

It does not appear from this answer that appellant was at any time the creditor of her husband. The manifest purpose of the appellant in the superior court, so far as it can be gleaned from this answer, was to establish the fact that the property was held in trust for her by her husband. She did not in that court, by her pleading, seek to show that the property had been conveyed to her in payment of any indebtedness due to her from her husband. She will not be permitted to prevail in this court by showing that the evidence established a defense to the bill which was not interposed by the answer. *Crone* v. *Crone,* 180 Ill. 599.

As appellant does not contend, by her brief and argument, that the judgment of the Appellate Court should be reversed for the reason that the Hermitage avenue property was held in trust for her by her husband, that defense to the bill must be regarded as waived in this court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*