(No. 21752.—

CLEO BITTNER *et al.* Defendants in Error, *vs.* PAULINE FIELD *et al.* Plaintiffs in Error.

*Opinion filed October 21, 1933—Rehearing denied Dec. 15, 1933.*

216

STONE and HERRICK, JJ., dissenting.

HAMILTON, BLACK, HOLTGREVE & KLATT, and RIDGELY & RIDGELY, for plaintiffs in error.

RALPH DEMPSEY, P. A. D'ARCY, C. S. TOWNLEY, WAYNE C. TOWNLEY, LOUIS L. WILLIAMS, C. R. BIRKETT, GEORGE W. HUNT, and J. EDWARD RADLEY, for defendants in error.

Mr. JUSTICE JONES delivered the opinion of the court:

Cleo Bittner, Sophia Rickman, Frederick Rickman, Dorothy Rickman and Nettie C. Chaffer filed a bill in the circuit court of Knox county to foreclose a deed of trust. Pauline Field, William A. Pfeiffer, Jr., and Elise Risser, (individually and as administrators with the will annexed of the estate of W. A. Pfeiffer, Sr., deceased,) Ernest H. Pfeiffer, Raymond R. Pfeiffer, Henry Denhart, trustee, Perry A. Birkett and Lester P. Birkett, (administrators of the estate of George Birkett, deceased,) the Washington Land Company, a corporation, Henry Denhart & Co., a banking corporation, Rae C. Heiple, receiver of said bank, and others, were made parties defendant to the bill. Answers were filed and the cause was referred to the master in chancery, who made a report recommending the entry of a decree in accordance with the prayer of the bill. Thereafter the court denied the administrators and heirs of the Pfeiffer estate leave to file a cross-bill. A decree of foreclosure was entered finding that William A. Pfeiffer, Sr., was during his lifetime personally liable for the payment of the notes described in the bill. The decree ordered the administrators of the Pfeiffer estate to pay the amount due on the notes within ten days; that in default of such payment the premises be sold, and, in case the proceeds of sale should be insufficient to pay the debt and costs of suit, that the administrators pay the deficiency in due course of administration. From that decree the administrators of the Pfeiffer estate appealed to the Appellate Court for the Second District. That court affirmed the decree, and the cause is in this court on a writ of *certiorari*.

The Washington Land Company is a corporation organized in January, 1919, under the laws of Illinois, with its principal place of business at Washington, Illinois. The object for which it was formed was "to conduct a general real estate agency business." It purchased three farms in Knox county. Two of them were sold and the third is

the land in controversy in this cause. It will be hereinafter referred to as the Wertz land. The Henry Denhart & Co. Bank was engaged in general banking and the farm loan business at Washington. Prior to 1920 it was operated by three partners as a private bank. In 1921 it was organized under the banking laws of this State. The former partners were the stockholders. They also held stock in the Washington Land Company. The bank was closed by the Auditor of Public Accounts in April, 1930, and Rae C. Heiple was appointed receiver. W. A. Pfeiffer, Sr., was a stockholder and director of the Washington Land Company. At a meeting of the board of directors in July, 1919, the board, on motion of Pfeiffer, decided to purchase the Wertz land at the price of $54,000, and Pfeiffer entered into a contract with the owner, Wilson Wertz, to purchase it. The contract was approved and accepted by the land company. Pursuant to the contract, title was conveyed by Wertz and wife to Pfeiffer by warranty deed dated February 5, 1920, and was recorded March 1, 1920. Of the purchase price $29,000 was paid by the Washington Land Company. The other $25,000 was borrowed in Pfeiffer's name from the Denhart bank. The notes were payable March 1, 1925, and were disposed of like other farm loans. Pfeiffer and the land company entered into a contract which recited that all property theretofore or thereafter caused to be conveyed to him by the land company should be held by him as trustee. The contract provided that he would re-convey the property whenever so directed, and with his wife would execute a deed with the grantee's name left blank and deliver it to the treasurer of the land company. Such a deed, dated March 15, 1920, was signed by Pfeiffer and his wife but was not acknowledged. It was deposited with Frank W. Hops, treasurer of the land company and a partner in the Denhart bank. The loan was not paid, and in order to renew it, Pfeiffer, on February 18, 1925, executed five promissory notes, each for $5000, payable

March 1, 1930, to the order of himself. He endorsed them in blank. Each note recites that it is secured by a mortgage deed made by Pfeiffer and his wife to Henry Denhart, trustee, conveying real estate in Knox county. On the back of each note there appears, "Negotiated by Henry Denhart & Co. Bank." There is also the statement, "The within note to be paid to the person who is last registered as the owner of the same on the books of Henry Denhart & Co. Bank, Washington, Illinois." Coupon interest notes were attached to the principal notes. The loan was obtained from the Denhart bank, which charged one-half of one per cent as commission. To secure the payment of the notes Pfeiffer and his wife executed a deed of trust conveying the Wertz land to Denhart, trustee. It was filed for record March 5, 1925. Cleo Bittner acquired two of the principal notes, Nettie C. Chaffer acquired one of them and the Rickmans acquired one. The other principal note was purchased by George Birkett. All the notes were acquired from the Denhart bank before maturity. Pfeiffer and his wife died prior to the filing of the bill. The interest due March 1, 1930, was in default and no part of the principal has been paid.

The answer of the administrators and heirs of the Pfeiffer estate alleges that the notes were signed by Pfeiffer on behalf of the Washington Land Company and delivered by it to the Denhart bank; that the proceeds were used by the land company in the purchase of the Wertz land; that the Denhart bank was the original owner of the notes; that it owned part of the stock in the land company and knew the notes were secured by said mortgage; that the owners of the notes hold them subject to all equities in favor of the mortgagor; that the Washington Land Company is the owner of the land and Pfeiffer acted merely as trustee; that the Denhart bank was fully acquainted with those facts, and that the Pfeiffer estate should not be liable for any deficiency. The answer did not attack

the validity of the notes or the trust deed. The defense offered was that Pfeiffer was not personally liable. The cross-bill, for which leave to file was asked, alleged that the acts of the Washington Land Company were *ultra vires* and that the deed to Pfeiffer and the notes and trust deed were void. The allegations contradict and are inconsistent with the answer of plaintiffs in error. A cross-bill must be founded upon matters of defense stated in the answer to the bill. (*Ragor* v. *Brenock,* 175 Ill. 494.) Complete relief was available by answer. A cross-bill was not necessary or proper, and the court properly denied leave to file it. *Roby* v. *South Park Comrs.* 252 Ill. 575.

Plaintiffs in error contend that the transactions of the land company, Pfeiffer and the Denhart bank are void as against public policy; that the law of this State forbids the purchase of real estate by a corporation, either in its own name or that of another, except for purposes incident to its business; that the Wertz farm was unlawfully bought by the land company as an investment and that the whole program was an attempt to evade the law; that the Denhart bank, as a partnership and as a corporation, its partners, officers and stockholders, knew all about the transaction and could not have enforced any liability against Pfeiffer or his estate; that the holders of the notes took them subject to all the equities and defenses available to Pfeiffer or his representatives and are in no better position than the original holder.

Plaintiffs in error are not in a position to urge that the deed to Pfeiffer or the notes and trust deed are void or that the borrowing of money by the land company was illegal. The only issue presented by the pleadings relates to the question of the liability of the Pfeiffer estate for any deficiency which may result from the foreclosure. A defense not presented by the answer will not be considered on review. (*Hill* v. *Siffermann,* 230 Ill. 19.) There is another reason why the validity of the trust deed cannot

be questioned in this proceeding. By its terms it conveys and warrants the land to the trustee. The word "warrants" is to be construed as if the instrument contained full covenants of seizin and general warranty. A warrantor will not be permitted to assail a title he has covenanted to maintain. Pfeiffer's representatives are estopped from setting up that he had no title to the land. *Roderick* v. *McMeekin,* 204 Ill. 625; *Dobbins* v. *Cruger,* 108 id. 188.

As a general rule the assignee of a note secured by trust deed or mortgage holds it subject to any defense which the mortgagor had against the original mortgagee. (*Olds* v. *Cummings,* 31 Ill. 188.) But this is not true of accommodation paper. Section 29 of the Negotiable Instruments act (Smith's Stat. 1931, chap. 98, p. 1967,) provides: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or endorser, for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party and in case a transfer after maturity was intended by the accommodating party notwithstanding such holder acquired title after maturity." The grantor in a mortgage to secure accommodation paper has no equities superior to those of the assignee of the note, who thereby becomes the equitable assignee of the mortgage. The party accommodated cannot recover the amount of the bill or note from the maker, but the settled law is that the maker can make no defense to accommodation paper in the hands of one who has taken it in good faith in the usual course of business for value. *Miller* v. *Larned,* 103 Ill. 562; *Neaf* v. *Potter,* 226 id. 628; *Keenan* v. *Blue,* 240 id. 177; *Foreman Trust and Savings Bank* v. *Cohn,* 342 id. 280.

Plaintiffs in error insist that the question as to accommodation paper cannot be considered by this court because

it was not presented by the pleadings. Defendants in error were only required to allege such facts in their bill as entitled them, under the law, to a decree of foreclosure. They were not required to allege that the notes were accommodation paper. The burden was upon the plaintiffs in error to prove a defense set up in their answer. The answer alleged the notes were made as accommodation paper, and the testimony conclusively shows they were. *Foreman Trust and Savings Bank* v. *Cohn, supra.*

The tax records show that for the years 1923 to 1930 the land was assessed in the name of the Washington Land Company, and the taxes for the years 1922 to 1928, except for 1923, were paid by it. A lease from Pfeiffer, as trustee, dated March 1, 1924, and its assignment, were recorded in the recorder's office on October 15, 1929. On November 14, 1928, a notice of tax lien was filed by the United States internal revenue department. It is urged that these records showed the Washington Land Company had an interest in the Wertz farm and charged defendants in error with notice that Pfeiffer was not the true owner. Taxes on real estate are frequently assessed in the name of others than the owner. The mere voluntary repeated payment of taxes on land of another will not establish title in the party paying the taxes and consequently would not amount to notice of title in such tax-payer. The law only charges a purchaser with notice of conveyance and incumbrances within the direct line of the title he is buying and nothing more. (*Miller* v. *Larned, supra; Vombrack* v. *Wavra,* 331 Ill. 508.) The record title was in Pfeiffer when the trust deed was executed. There is no claim or proof that the note holders had any actual knowledge the taxes were paid by the land company. As to the matters placed of record after the trust deed was filed, the note holders were under no obligation to search the records before buying the notes to ascertain what conveyances or incumbrances the grantor subsequently made. (*Miller* v.

*Larned, supra.*) The records mentioned do not charge the note purchasers with notice of the land company's interest in the land.

The testimony of certain of the note holders relating to the purchase of the notes and to transactions during the lifetime of Pfeiffer was improperly admitted, but the other competent evidence in the record is sufficient to establish their right to recover.

The holders of the notes purchased them in good faith for value, before maturity, without any notice that Pfeiffer was not the actual owner of the land. The notes bore printed statements clearly indicating they were to be negotiated. The trust deed repeatedly refers to the legal holder or holders. Pfeiffer authorized the bank to negotiate the notes and he knew they were sold. He held himself out as the absolute owner of the land, and his actions estop his representatives from asserting that the transaction was illegal. (*Dobbins* v. *Cruger, supra.*) Their position is not aided by the claim that Pfeiffer acted as a mere trustee. The notes did not disclose such relationship, and even if they did, he would have incurred a personal liability unless the notes provided the payees should look exclusively to the trust estate for payment. (*Austin* v. *Parker,* 317 Ill. 348.) Pfeiffer was liable to the holders of the notes for their payment and for any deficiency in the proceeds of a sale of the land under foreclosure. His representatives stand in his shoes.

The judgment of the Appellate Court is correct, and it is affirmed.

*Judgment affirmed.*

STONE and HERRICK, JJ., dissenting.