(No. 27206.—

MARY NICKOLOFF, Appellant, *vs.* JOHN NICKOLOFF, Appellee.

*Opinion filed November 16, 1943.*

WILBUR A. TRARES, for appellant.

FORTH & FORTH, for appellee.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a part, only, of a decree of the circuit court of Madison county entered in a suit for divorce, and also an appeal from a separate judgment of the same court entered in an action at law.

Appellant filed the original complaint in which she sought a decree of divorce from appellee. To the complaint, appellee filed an answer denying the material allegations of the complaint. He also filed a counterclaim, to which appellant filed her answer. He alleged that two pieces of property, which were described in the counterclaim, and to which appellant held the legal title of record, were purchased with funds owned by the parties jointly. He averred that by reason of his joint ownership of the funds used for the purchase of the properties, the titles to which were taken in the name of appellant, resulting trusts arose in his favor. He asked the court to enter a decree establishing such trusts and finding that he was the owner of a one-half interest in both properties, and for partition.

At about the same time, appellee filed a complaint at law against appellant to recover the possession of a certain policy of insurance, issued on the life of appellee and in which appellant was named as beneficiary. Issues were joined on this complaint. By agreement of the parties the court consolidated the law case with the chancery case. Thereafter, the two cases were heard together, as one case. The court found the issues in favor of appellant on her complaint for divorce, and the issues on the counterclaim in favor of appellee. A decree was entered granting to appellant a divorce from appellee on her complaint. By the decree, the counterclaim was sustained and appellee was decreed to be the owner of a one-half interest in the two parcels of real estate described in the counterclaim. Partition between the parties was ordered by the decree. It directed that the property be divided equally between them. Appellant was ordered to execute a deed within five days of the date of the decree, conveying to appellee a one-half interest in the properties.

A separate judgment was entered in the law case finding that appellee was the owner of the insurance policy

in controversy, that appellant had no interest therein, and that appellee was entitled to recover the possession thereof. The judgment ordered the delivery of the policy to appellee, and assessed damages against appellant in the sum of one cent.

There was no appeal from that part of the decree granting the divorce. The decree, to that extent, has become final. Appellant perfected this appeal from that part of the decree holding that appellee was the owner of a one-half interest in the properties. By separate notice, an appeal was perfected by appellant from the judgment in the law case, on the same day. The two appeals have been presented to this court and submitted on one record, as one cause.

The parties were married in 1903 in Bulgaria. Appellee came to this country in 1907. Appellant came two years later. One child was born to them before the wife came to this country. Four more children were thereafter born to them. The evidence bearing on the title to the properties and the transactions in connection therewith is confined to the testimony of appellant and appellee. There is no other evidence of any consequence touching those issues. The testimony of the parties is in hopeless conflict. They resided at several different places from 1909 until about the year 1920, when they located permanently in Madison county. The evidence indicates that during the greater part of the time after they came to this country, they were engaged principally in illicit liquor traffic. Appellee worked sporadically at various places in other occupations. Appellant was also employed at different times in factories and other similar work. The evidence shows, however, that the principal business of both, at all times, was "bootlegging."

According to appellant's testimony, when they took up their permanent abode in Madison county, in 1920, they had saved up $2000. She claimed that these savings were

from her earnings at different places while she was engaged in illicit liquor traffic and keeping roomers and boarders. She claimed the savings as her own. On June 14, 1920, the property referred to in the record as the residence property, was conveyed to them jointly. They paid $1250 for this property. The parties are in agreement that this property was purchased out of the accumulated savings of $2000. On July 21, 1921, both parties joined in a deed conveying to appellant appellee's one-half interest in this property. Appellant's version of this transaction is that after the purchase of the property, for which purpose $1250 was drawn from the savings, appellee drew out of the account $850, which was in the bank in their joint names, and lost the same at gambling; that in order to repay appellant the $850, which she claimed was her money, appellee deeded to her his one-half interest in the property. Appellee claims that all of the funds constituting the $2000 belonged to both of them jointly; that it represented their joint earnings from their employment and profits arising out of the liquor traffic. He further testified that he conveyed his one-half interest in the property to appellant upon her promise to hold the title for him and to reconvey that interest to him. The parties are also agreed that immediately after they purchased this property, they occupied it as a residence where they continued the making and selling of liquor, in violation of law.

On May 21, 1923, the other property, referred to in the record as the business property, was purchased. There were no improvements on that property at the time. Appellant testified that she purchased the vacant lots, paying therefor the sum of $1250; that this was money she had saved from the business; that the business was hers and that all the profits belonged to her. The title was conveyed to appellant. In 1924 they erected a two-story brick business building on a part of this property, at a cost of $15,000. Seventy-five hundred ($7500) dollars

was borrowed from a local bank. This was afterwards repaid. She claimed the remaining $7500 used to pay the cost of the building were funds accumulated by her, from her business. She also testified she afterwards paid off the loan from the bank out of the profits of the business. About a year after the completion of the building they moved in and occupied the second story as their residence. They opened up a confectionery and "bootlegging" business in the room on the first floor. This business was continued until the repeal of the eighteenth amendment to the Federal constitution. Subsequently thereto, the room was occupied by a licensed saloon, the license for which was in the name of a son-in-law.

According to appellee's testimony, he owned a one-half interest in all the funds accumulated. During the time they were engaged in the illicit traffic of liquor, he served several jail sentences of more or less duration, including one term of two years in the Federal penitentiary at Fort Leavenworth. He was also in jail for some months for failure to pay a civil judgment. He testified that the business property was deeded to his wife in order that she might hold the title thereto for their joint use, so that "whenever we got raided I took the rap." He further testified that she agreed to hold the title to this property for their joint use, and promised to convey a one-half interest to him.

The law is well settled that a resulting trust arises, if at all, the instant the legal title is taken and the title vests. The burden is on the party seeking to establish the trust to do so by evidence that is clear, convincing and unequivocal and unmistakable. If the evidence as to the ownership of the funds constituting the purchase money is doubtful or capable of reasonable explanation upon any theory other than the existence of a trust, it is insufficient. (*Spina* v. *Spina,* 372 Ill. 50.) In order to establish the trust, the one claiming it must submit proof which is so

clear and convincing that it is unequivocal and unmistakable to the extent of sustaining only one conclusion. If the evidence produced is capable of a reasonable explanation upon some theory other than that of the trust, the trust theory fails. (*Banning* v. *Patterson,* 363 Ill. 464; *Neagle* v. *McMullen,* 334 Ill. 168; *Chechik* v. *Koletsky,* 311 Ill. 433; *McHenry* v. *McHenry,* 248 Ill. 506.) The rule is also settled that when property is taken in the joint names of husband and wife, even where the consideration is all furnished by one of them, there is a presumption of a gift from the one furnishing the consideration. Clear and convincing evidence is required to overcome this presumption and establish a resulting trust. *Walker* v. *Walker,* 369 Ill. 627; *Byerly* v. *Byerly,* 363 Ill. 517; *Partridge* v. *Berliner,* 325 Ill. 253.

Where property is conveyed to the wife, even though the husband furnishes all of the purchase price, there is a presumption that the conveyance is a gift or advancement, and, unless this presumption is overcome, the husband is not in a position to claim a resulting trust by mere proof of the payment of the purchase money. (*Scott* v. *Cornell,* 295 Ill. 508; *Schultz* v. *Schultz,* 274 Ill. 341.) The fact that the husband thereafter improved the property and paid taxes thereon is not inconsistent with the presumption that he intended it as a gift or advancement. (*Clavey* v. *Schnadt,* 272 Ill. 464; *Lowenberg* v. *Booth,* 330 Ill. 548.) Where a man purchases property with his own funds and causes it to be conveyed to his wife, the presumption is that it was intended as a gift or as an advancement. The principal reason for this presumption is that there is a legal obligation resting upon the husband to support his wife. (*Lutyens* v. *Ahlrich,* 308 Ill. 11.) Where a husband furnishes a part of the purchase money for land conveyed to his wife with his consent, he cannot, several years subsequently, on separating from his wife, claim a trust in the land. *Goelz* v. *Goelz,* 157 Ill. 33.

. . As to the residence property, appellee himself testified, and the record shows conclusively, that this property was originally conveyed to appellant and appellee jointly. Under that conveyance they became tenants in common. More than a year later, appellee executed a deed in which his wife joined, conveying his interest in that property to appellant. Under the rule that a resulting trust, if created at all, must arise at the instant the title is vested, it is clear that no trust arose out of the original transaction when this property was conveyed to the husband and the wife jointly. We do not understand that appellee so contends. His contention is, however, that when he conveyed his interest in the property to his wife, more than a year later, she promised to reconvey it to him at some future indefinite time. It is from this transaction that he claims the trust arose as to this property. As already pointed out, where a husband conveys property to his wife, or causes it to be conveyed to her, it is *prima facie* presumed to be a gift or advancement. The burden is on him, when he seeks to afterwards recover the property, to establish his claim by clear and convincing evidence, and evidence which will admit of no other explanation.

As to the business property, his claim that a resulting trust arose is based on the fact that he claimed an interest in the purchase money. Regardless of the fact as to the ownership of the funds, his testimony does not bring him within the rule establishing a trust by that degree of evidence so clear and convincing as to leave no reasonable doubt. The statements attributed to appellant by other witnesses do not furnish any corroboration which adds weight to the testimony of appellee. In *Spina* v. *Spina,* 372 Ill. 50, this court said: "Nearly a century ago in *Reeve* v. *Strawn,* 14 Ill. 94, this court well said: 'Before we transfer the title to real estate upon the strength of parol testimony alone, the facts upon which such change is asked should be so convincing as to leave no reasonable

doubt in the mind of the court, and not, as in this case, consist of ambiguous expressions and uncertain declarations made by the party sought to be charged and testified to by witnesses after the lapse of several years.' "

If we could say that the parties were of equal credibility and that their testimony was entitled to equal weight, then appellee wholly failed to discharge the burden the law cast upon him to establish the trust relied upon. But they cannot, upon this record, be regarded as of equal credibility. The record shows that in 1927, appellee was confined in the county jail of Madison county on a *capias ad satisfaciendum* issued in a cause in which a civil judgment had been rendered against him. Thereafter he filed a petition in the county court of Madison county for discharge under the Insolvent Debtor's Act. In this petition he alleged that he was insolvent and desired to avail himself of the provisions of that act. The petition was sworn to by him before the county clerk on January 3, 1927. On February 7, 1927, he filed a schedule in which he listed one 1923 model Dort automobile as the only property he owned. This schedule was sworn to by appellee on February 7, 1927, before the county clerk. Obviously, he either committed perjury when he swore to that petition and schedule, or he committed perjury in his testimony on the trial of this case. If he owned any interest in the property here involved at the time he testified in this case, he owned the same interest in the same property in 1927 when he made the affidavits that he was insolvent and that he owned no property except the automobile. In this state of the record it cannot be said that his testimony outweighs the testimony of appellant. The burden was on him to establish facts from which the alleged trusts would arise. The real issue in this case was the ownership of the funds which were used to purchase the properties. Unless he had an interest in these funds he has no basis whatever for his claim that any trust arose in his favor.

If, as a matter of fact, those funds belonged exclusively to appellant, no trusts arose as a result of the transactions. Appellant testified positively that the funds belonged to her and that he had no interest therein. He was equally positive that the money belonged, jointly, to both. This question of fact must, therefore, be determined on the testimony of the two parties themselves. If his testimony was of equal or less weight than the testimony of appellant, the trust was not established. The burden was on him to overcome not only her testimony but the presumptions of law in her favor.

The transactions out of which he claims the trust arose occurred in 1921 and 1923. He made no claim to any interest in the properties, so far as the record shows, until he filed his counterclaim in this case on October 7, 1940. This was after he had been separated from his wife for a period of some two years and after she had brought this suit for divorce. During all the time involved, he had full knowledge that the legal title to the properties had been vested in appellant in 1921 and 1923, respectively. It was more than seventeen years before he raised any objection or made any claim, and then not until his affections had become alienated from appellant and his feelings were hostile to her. This indicates that his claim was not made in good faith, but was only brought forward in retaliation against her for filing the suit for divorce. The evidence tending to support the counterclaim falls far short of establishing such a case as is required by the rules consistently and repeatedly announced by this court, in order to establish a resulting trust. For the same reasons, appellee was not entitled to have title to any interest in the properties vested in him under section 17 of the Divorce Act. Ill. Rev. Stat. 1943, chap. 40, par. 18.

This is not a case where the rule that, the chancellor having seen the witnesses and heard them testify, the decree should not be reversed on the evidence, may be invoked in support of the decree. Even giving to appellee's

testimony full weight and credit, it was clearly insufficient to establish the trusts in accordance with the rules announced by this court. If we consider the weight of the testimony, the burden was on him to establish the necessary facts by testimony which was clear and conclusive, and which would admit of no other explanation. He was definitely discredited by the fact that in 1927 he had sworn, in his petition for discharge under the Insolvent Debtor's Act, that he owned no property and, in his schedule in connection therewith, had listed as his sole belongings an automobile of little value. By this conduct he is so discredited that no one can say that his testimony outweighs the testimony of appellant, even if his testimony was sufficient to bring him within the rule. This makes it unnecessary to consider any other questions argued.

The court below erred in decreeing that appellee was the owner of a one-half interest in the properties, and in ordering partition thereof. That decree is reversed and the cause is remanded to the circuit court of Madison county, with directions to enter a decree dismissing the counterclaim for want of equity.

As to the appeal from the judgment in the law case, it is clear that this court has no jurisdiction. The consolidation of that case with the chancery case could not confer jurisdiction on this court on direct appeal from the separate judgment, entered in the law case. That appeal will have to be transferred to the Appellate Court. *Duncan* v. *Suhy*, 378 Ill. 104.

The appeal from the judgment in the law case is transferred to the Appellate Court for the Fourth District. Upon request of appellant and the payment of the cost thereof, the clerk will prepare, certify and transmit to the Appellate Court, a copy of such parts of the record filed in this court as appellant may request.

*Decree reversed and remanded, with directions.*
*Law case transferred.*